**UNITED STATES DISTRICT COURT          EASTERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| *versus* | § | CASE NO. 1:08-CR-94(3) |
| | § | |
| CHESTER JONATHAN HUGGINS | § | |

## MEMORANDUM AND ORDER

Pending before the court is Defendant Chester Jonathan Huggins's ("Huggins") *pro se*
Motion for Early Termination of Supervised Release (#171), wherein he seeks early termination
of his 5-year term of supervised release (which he erroneously refers to as "parole"). Huggins's
supervising United States Probation and Pretrial Services ("Probation") officer in the Northern
District of Florida believes Huggins should be considered for early termination. The Government
also has no objection. Huggins's probation officer in the Eastern District of Texas, however,
prepared a report and is opposed to the motion. Having considered the motion, the Government's
position, Probation's report, the record, and the applicable law, the court is of the opinion that
Huggins's motion should be denied.

## I.     Background

On June 25, 2008, a federal grand jury in the Eastern District of Texas, Beaumont
Division, returned an Indictment against Huggins and two codefendants, charging him in Count
One with Conspiracy to Possess with Intent to Distribute Marijuana in an amount of 1,000
kilograms or more, in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 846. On July 28, 2008,
Huggins appeared with retained counsel for an initial appearance and arraignment. He pleaded
not guilty to the Indictment and was released on a $25,000 unsecured appearance bond under
conditions of pretrial supervision. Shortly thereafter, he absconded from supervision, and a

warrant was issued for his arrest on August 22, 2008.  Huggins was arrested in the Southern District of Mississippi on February 28, 2011, on the warrant and was returned to the Eastern District of Texas.  On March 21, 2011, he appeared with counsel for an initial appearance regarding revocation of his pretrial release at which time he consented to detention and was remanded to the custody of the United States Marshals Service.  On April 13, 2011, the United States Attorney's Office filed a one-count Information against Huggins, charging him with Conspiracy to Distribute and Possess with Intent to Distribute 700 Kilograms or More, But Less than 1,000 Kilograms of Marijuana, in violation of 21 U.S.C. § 846.  On April 14, 2011, Huggins pleaded guilty to the offense charged in the Information.  On August 10, 2011, Judge Thad Heartfield sentenced Huggins to a term of 151 months' imprisonment, followed by 5 years of supervised release.  He was also ordered to forfeit his interest in $95,000 and $29,840 in United States currency, and a money judgment in the amount of $300,000 was entered against him.  On March 25, 2015, Huggins's sentence was reduced to 121 months' imprisonment based on a guideline sentencing range that had subsequently been lowered and made retroactive by the United States Sentencing Commission pursuant to 28 U.S.C. § 994(u).  Huggins completed his term of imprisonment on September 20, 2019, and began serving his term of supervised release in Florida.

In his motion, Huggins, age 72, asks the court to terminate his supervision at this time, after serving about 53 months of his 60-month term of supervised release.  Huggins states that he has successfully complied with the terms of his release, has been gainfully employed at a lumber company, has also started a small business clearing land, has reportedly remarried and now supports a wife and three young step-granddaughters, and remains a significant part of the lives

of his biological children and grandchildren from a previous marriage.   He also claims to suffer

from COPD and other physical ailments.

II.   Analysis

Title 18, United States Code, Section 3583(e) authorizes a district court to terminate

supervised release at any time after the expiration of one year if, after considering the factors set

forth in Section 3553(a),[1] "it is satisfied that such action is warranted by the conduct of the

defendant released and the interest of justice."  18 U.S.C. § 3583(e)(1); *accord United States v.*

*Johnson*, 529 U.S. 53, 59-60 (2000); *United States v. Peters*, 856 F. App'x 230, 233 (11th Cir.

2021); *Herndon v. Upton*, 985 F.3d 443, 446 n.5 (5th Cir.), *cert. denied*, 142 S. Ct. 82 (2021);

*United States v. Melvin*, 978 F.3d 49, 52 (3d Cir. 2020); *United States v. Cochran*, 815 F. App'x

361, 363 (11th Cir. 2020); *United States v. Davies*, 746 F. App'x 86, 88-89 (3d Cir. 2018), *cert.*

*denied*, 139 S. Ct. 1275 (2019).   "Early termination of supervised release is not an entitlement."

*United States v. George*, 534 F. Supp. 3d 926, 927 (N.D. Ill. 2021).  Instead, the defendant bears

the burden of demonstrating that early termination is warranted.  *Id.*; *United States v. Luna*, No.

1:95-cr-05036-AWI, 2018 WL 10156108, at *1 (E.D. Cal. Mar. 12, 2018), *aff'd*, 747 F. App'x

561 (9th Cir. 2018).   Early termination "is not warranted as a matter of course."  *United States*

*v. Morris*, No. 3:99-cr-264-17 (VAB), 2022 WL 3703201, at *3 (D. Conn. Aug. 26, 2022).  "To

---

[1] Section 3553(a) directs courts to consider:  the nature and circumstances of the offense and the defendant's history and characteristics;  the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;  the need to deter criminal conduct;  the need to protect the public;  the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;  the kinds of sentences and sentencing ranges established for defendants with similar characteristics under applicable Sentencing Commission guidelines and policy statements;  any pertinent policy statement of the Sentencing Commission in effect on the date of sentencing;  the need to avoid unwarranted disparities among similar defendants;  and the need to provide restitution to the victim.  18 U.S.C. § 3553(a).

the contrary, it is only 'occasionally' justified." *United States v. Shellef*, No. 03-CR-0723 (JFB), 2018 WL 3199249, at *1 (E.D.N.Y. Jan. 9, 2018) (quoting *United States v. Lussier*, 104 F.3d 32, 36 (2d Cir. 1997)).

Although the Government and the probation officer in Florida do not oppose early termination, this fact, standing alone, is insufficient to justify granting Huggins's request for early termination. *See*, *e.g.*, *United States v. Boyd*, 606 F. App'x 953, 960 (11th Cir. 2015) ("Just as a federal prosecutor or probation officer cannot dictate a district court's sentence, they likewise do not call the shots concerning a court's decision whether to terminate early a term of supervised release. A criminal sentence is the court's sentence, not the prosecutor's and not the probation officer's."); *United States v. Lynn*, No. S90-00053(P), 2022 WL 2446328, at *3 (S.D. Miss. May 31, 2022) (finding that although the Government and probation did not oppose early termination, that fact, standing alone, was insufficient to justify granting the defendant's request for early termination of supervised release); *United States v. Hartman*, No. 3:00-cr-228, 2013 WL 524257, at *1 (N.D. Tex. Jan. 18, 2013) (denying defendant's request for early termination of supervised release despite the Government's recommendation that it be granted), *adopted by* 2013 WL 540490 (N.D. Tex. Feb. 13, 2013); *United States v. Grimaldi*, 482 F. Supp. 2d 248, 249 (D. Conn. 2007) (denying early termination even though the defendant's probation officer supported it).

District courts enjoy considerable discretion in determining when the interest of justice warrants early termination. *United States v. Tacker*, 672 F. App'x 470, 471 (5th Cir. 2017); *United States v. Jeanes*, 150 F.3d 483, 484-85 (5th Cir. 1998); *United States v. Lynn*, No. S90-00053(P), 2022 WL 2446328, at *3 (S.D. Miss. May 31, 2022); *see Melvin*, 978 F.3d at 52. Compliance with the terms of supervised release and with the law alone is not enough to merit

early termination; such conduct is expected and required.  *United States v. Taylor*, 729 F. App'x 474, 475 (7th Cir. 2018) ("[M]ere compliance with the terms of supervised release is expected, and without more, insufficient to justify early termination."); *United States v. Seymore*, No. CR 07-358, 2023 WL 3976200, at *1 (E.D. La. June 13, 2023) ("[C]ourts have generally held that something more than compliance with the terms of [supervised release] is required to justify an early termination . . . ." (quoting *United States v. Smith*, No. 10-cr-53-DPJ-FKB, 2014 WL 68796, at *1 (S.D. Miss. Jan. 8, 2014))); *Lynn*, 2022 WL 2446328, at *4 (although the defendant adhered to the conditions of his release, a balancing of the 18 U.S.C. § 3553(a) factors did not support early termination, noting that the defendant "engaged in constant serious criminal behavior when he was given chances before"); *United States v. Sandles*, No. 11-CR-204-PP, 2021 WL 3080995, at *3 (E.D. Wis. July 21, 2021) ("[C]ourts have held 'that the conduct of the defendant necessary to justify early termination should include more than simply following the rules of supervision; otherwise, every defendant who avoided revocation would be eligible for early termination.'" (quoting *United States v. O'Hara*, No. 00-cr-170, 2011 WL 4356322, *3 (E.D. Wis. Sept. 16, 2011))); *United States v. Boudreaux*, No. 2:19-CR-00377-01, 2020 WL 7635708, at *1 (W.D. La. Dec. 22, 2020); *United States v. Pittman*, No. 3:15-CR-221-O(1), 2020 WL 6564724, at *2 (N.D. Tex. Nov. 9, 2020) (finding that the conduct of the defendant did not warrant early termination of supervised release, as the defendant sought relief based on his circumstances and the alleged conduct of others) (citing 18 U.S.C. § 3583(e)(1)); *see United States v. Berger*, No. CR 09-308, 2021 WL 2354517, at *5 (W.D. Pa. June 9, 2021) ("Compliance with the conditions of supervision, including refraining from engaging in criminal conduct and paying restitution, however, is required behavior while serving a term of supervised release."). As courts

have observed, "if every defendant who complied with the terms of supervised release were entitled to early termination, 'the exception would swallow the rule.'" *United States v. Kassim*, No. 15 Cr. 554-3 (KPF), 2020 WL 2614760, at *2 (S.D.N.Y. May 22, 2020) (citing *United States v. Medina*, 17 F. Supp. 2d 245, 247 (S.D.N.Y. 1998)).

While the court need not find extraordinary, compelling, or changed circumstances to justify an early termination of supervised release, this does not mean that such circumstances are irrelevant to ruling on a motion under § 3583(e)(1). *United States v. Ferriero*, No. 13-0592 (ES), 2020 WL 6701469, at *2 (D.N.J. Nov. 13, 2020) (citing *Melvin*, 978 F.3d at 53); *accord United States v. Parisi*, 821 F.3d 343, 347 (2d Cir. 2016). This is because, if a sentence was "sufficient, but not greater than necessary" when first pronounced, pursuant to 18 U.S.C. § 3553(a), it would be expected that something has changed that would justify an early end to a term of supervised release. *Melvin*, 978 F.3d at 53; *United States v. Jackson*, No. 11-55, 2022 WL 2789870, at *2 (W.D. Pa. July 15, 2022); *United States v. Santoro*, No. 21-76 (MAS), 2022 WL 37471, at *2 (D.N.J. Jan. 4, 2022); *Ferriero*, 2020 WL 6701469, at *2. In other words, extraordinary circumstances may be sufficient to justify early termination of a term of supervised release, but they are not necessary for such a termination. *Melvin*, 978 F.3d at 53; *United States v. McClamma*, 676 F. App'x 944, 947 (11th Cir. 2017) ("New or unforeseen circumstances can justify a modification, but such circumstances are not necessary."); *Parisi*, 821 F.3d at 347 (recognizing that "changed circumstances may in some instances justify a modification" of a term of supervision). Nonetheless, "'generally, early termination of supervised release under § 3583(e)(1)' will be proper 'only when the sentencing judge is satisfied that new or unforeseen circumstances' warrant it." *Melvin*, 978 F.3d at 53 (quoting *Davies*, 746 F. App'x at 89);

*Seymore*, 2023 WL 3976200, at *1 ("[E]arly termination is usually granted only in cases involving changed circumstances, such as exceptionally good behavior." (quoting *Smith*, 2014 WL 68796, at *1)).

Huggins's offense of conviction entails his engaging in a multi-state marijuana-trafficking conspiracy from 2006 to 2008. In July 2006, Codefendant Bell began purchasing marijuana from Codefendant Lopez in Houston, Texas, and from Coconspirator Wagner in Victoria, Texas. Bell hired Coconspirator Jenkins of Natchez, Mississippi, to transport the marijuana to Huggins, Bell's half-brother, in Panama City, Florida. Because Jenkins was a licensed pilot, Bell purchased a Cessna airplane to transport the marijuana to Florida. After about six months, a hydraulic problem arose with the plane's landing gear, which caused the plane to crash-land, and it was no longer used. Bell and Jenkins subsequently transported the marijuana to Huggins in Florida exclusively by vehicle. Upon receiving the marijuana from Bell and/or Jenkins, Huggins sold the marijuana for a profit. The conspiracy ended in June 2008 following a controlled purchase of narcotics from Wagner and the execution of search warrants at Huggins's and Lopez's residences. Huggins stipulated that he was responsible for possessing with the intent to distribute not less than 700 kilograms but not more than 1,000 kilograms of marijuana during the course of the conspiracy.

Huggins was previously convicted in 1998 of engaging in a similar marijuana-trafficking conspiracy from January 1994 to July 1995 in which he also received marijuana in Florida from his half-brother, Bell, to sell for a profit. He was found to be responsible for 648.23 pounds of marijuana. In fact, his offense of conviction began while he was still on supervised release for his prior offense, but he was not indicted until June 2008. In an interview with the probation officer,

Huggins stated that his brother, Bell, got in a bind with Mexican drug dealers, so Bell asked him to assist in selling drugs. Huggins stated that he fell back into selling marijuana in order to help his brother. He explained that he never planned to get back into the drug business after his previous conviction, but his brother needed him. Huggins further told the probation officer that he absconded pretrial supervision because he thought he was facing 20 years to life in prison, which, in his mind, was a death sentence. He added that if he had known that he was facing only 5 to 40 years, he would have never left. When sentenced for his offense of conviction, Huggins did not receive an adjustment for acceptance of responsibility and received an enhancement for obstruction of justice due to his absconding from supervision for 2½ years.

The Presentence Investigation Report ("PSR") reflects that Huggins has a significant criminal history beginning at age 23, which includes prior convictions for disorderly conduct (2x), resisting arrest without violence (2x), possession of marijuana, driving under the influence (3x), leaving the scene of an accident with injuries, conspiracy to possess with intent to distribute marijuana, reckless driving with alcohol, and refusal to submit to chemical/physical test of breath. He failed to comply with a previous term of probation and failed to appear in court on another occasion. As noted above, at the time his offense of conviction was committed, he was still serving his term of supervised release for his previous marijuana-trafficking conviction in the Eastern District of Texas. In addition, the offense was committed while an active probation violation warrant was pending in a Florida state case for driving under the influence. Huggins also has a prior history of abusing illegal substances and of alcohol abuse into his 50's.

Huggins contends that early termination of his supervised release would benefit his entire family by allowing them to travel more easily for family reunions and family vacations. Courts

have often denied requests for early termination of supervised release based on a defendant's desire to travel for business purposes or to visit family. *See United States v. Alber*, No. 14-491(SRC), 2022 WL 1683710, at *3-4 (D.N.J. May 25, 2022) (travel for job training and family needs); *Santoro*, 2022 WL 37471, at *3 (travel out-of-state to spend time with family); *United States v. Tinsley*, No. 12-263, 2020 WL 1472428, at *3 (W.D. Pa. Mar. 26, 2020) (travel for "business opportunities"); *United States v. Gonzalez*, No. 94-cr-0134 (JSR), 2015 WL 4940607, at *1 (S.D.N.Y. Aug. 3, 2015) (travel for out-of-state employment training programs). In this instance, Huggins gives no indication that has previously made a request to his probation officer for permission to travel that was denied. Moreover, the type of travel in which he wishes to engage is neither new nor unforeseen and could be easily accommodated within his current term of supervised release where he has been on a low-risk caseload since April 2021. As the probation officer in the Eastern District of Texas remarks, "during his supervision term, Mr. Huggins is free to travel without restriction in the supervising district. In addition, he is not forbidden to travel outside the district; it only requires permission which can be easily granted by the probation officer or Court." In the absence of a showing that he has been denied permission to travel, Huggins's level of supervision on the low-risk caseload, which "provides for minimal intervention or contact with the U.S. Probation Office unless [he] is in need of services or referrals," should provide no impediment to his traveling to family reunions and on family vacations. His supervision level would also permit him to address any need to seek medical treatment for COPD or other ailments. Nevertheless, Huggins maintains that the early termination of his supervised release would remove the "psychological fear" that he might at any moment be taken away from his new family that depends on him. With respect to this assertion, the court concurs with the

observation of the Texas probation officer—"It is unclear as to why Mr. Huggins would currently possess a psychological fear of being taken away from his family if he is maintaining compliance and continuing to do well."  Huggins further alleges that his continued supervision is an unnecessary burden on an already overworked system.  As for this argument, the court notes that the cost and workload imposed by a defendant's continued supervision is not among the Section 3553(a) factors that must be considered when deciding a motion for early termination of supervised release.  *See* 18 U.S.C. § 3553(a).  Indeed, the fact that supervised release requires the expenditure of government funds is certainly not a "new or unforeseen circumstance[ ]."  *Melvin*, 978 F.3d at 53 (quoting *Davies*, 746 F. App'x at 89).

While Huggins's compliance to date should be commended, continuing him on supervision would provide him the best opportunity for success in reentry in view of his risk for recidivism. Requiring Huggins to complete his entire term of supervised release safeguards against the reoccurrence of criminal activity and protects the community.  In fact, Huggins does not have a good track record with regard to complying with prior terms of release.  There was only a short time remaining on his previous term of supervised release in a drug-trafficking case in the Eastern District of Texas when he began committing his offense of conviction in 2006 at the behest of his brother.  Then, after he was arrested, arraigned, and given an unsecured bond in 2008, he absconded pretrial supervision and was not located for another 2½ years.  Furthermore, Huggins committed his offense of conviction while there was an active warrant pending for violation of his probation in a driving under the influence case in Leon County, Florida.  In view of this series of occurrences, the court has little assurance that Huggins would not once again revert to criminal

activity, especially if a family member needed his assistance, during the seven months remaining on his current term of supervised release.

Generally, early termination of supervised release is not granted unless there are significant medical concerns, substantial limitations on employment, or extraordinary post-release accomplishments that would warrant such a release.  Huggins does not identify any such circumstances in his motion and is instead seeking early termination of his supervision simply for complying with the conditions imposed by the court.  Thus, although Huggins appears to be on the right path, the court believes that completion of his full term of supervised release appropriately reflects the seriousness of his offense, deters future criminal conduct, and provides needed structure for his continued rehabilitation.  *See Lynn*, 2022 WL 2446328, at \*4 (holding that the serious nature of the defendant's crimes and his history and characteristics significantly outweighed his actions after his release from prison).  Given the nature of his offense of conviction involving the repeated trafficking of large quantities of drugs, his criminal history, his failure to comply with  previous terms of supervised release and probation, his absconding for over two years while on pretrial release, and the recommendation of Probation in the Eastern District of Texas that the court deny the motion for early termination and allow Huggins to finish his term as ordered, the court is of the opinion that the early termination of Huggins's current term of supervised release would not be in the interest of justice.

III.   Conclusion

In accordance with the foregoing, Huggins's *pro se* Motion for Early Termination of Supervised Release (#171) is DENIED.

SIGNED at Beaumont, Texas, this 29th day of January, 2024.

_____
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE